## OFFERS FOR THE PURCHASE OF MUNICIPAL BONDS.

Common Pleas Court of Lucas County.

ARTHUR T. BEEL, DOING BUSINESS UNDER THE TRADE NAME OF A.
T. BELL & COMPANY, v. PLANT CITY, A MUNICIPALITY IN
THE STATE OF FLORIDA.*

Decided, October 7, 1920.

*Bids for Bonds Offered by a Municipality—Terms and Conditions of
Sale and Purchase Found in the Offer of the Purchaser as Accepted
by the Seller—Rather than as Expressed in the Advertisement for
Bids—"Legality" of an Issue of Bonds—Includes the Security Of-
fered as well as Compliance with Legal Formalities—Disposition of
Check Deposited as Liquidated Damages in Case of Breach on the
Part of the Bidder.*

1. Where a municipality by advertisement invites bids for an issue of
bonds, and a bidder in his offer states conditions which vary some-
what from those embodied in the advertisement for bids, and his
offer is accepted, by the municipality, the contract of sale is found
in the letter of the purchaser, rather than in the advertisement for
bids, insofar as the offer of purchase differs from the conditions
named in the advertisement.
2. The requirement made by a purchaser that the municipality shall
furnish evidence of the legality of the proposed issue "to the sat-
isfaction of our attorney," permits the attorney to take into con-
sideration not only the legal formalities attending the issue, but
also the security afforded by the proposed obligation; and the bid-
der may refuse to accept the bonds where his attorney has reported
that because of a limitation on the tax rate and the present valu-
ation of property subject to taxation by the municipality when con-
sidered in connection with the amount of bonds already outstand-
ing, "it appears doubtful whether the proposed issue could be paid
at maturity.
3. Forfeiture will be denied of a certified check given by the bidder to
the municipality to be applied in part payment of the bonds on de-
livery, or "returned to us on demand should we not be awarded the
bonds or should our attorney not approve of their legality," or to
be "applied by you as full liquidated damages in case we refuse to
carry out the terms of this bid. On the contrary, in the absence
of any showing of fraud or collusion between the bidder and his
attorney, an order will be made for the surrender or cancellation
of the check.

*Affirmed by the Court of Appeals.

*Marshall & Fraser,* for plaintiff.
*E. L. Peters* for defendant.

Some time prior to February 2, 1920, the city of Plant City, Florida, advertised that it would receive bids for an aggregate par value of seventy thousand dollars ($70,000.00) of paving bonds of the municipality, and in the advertisement said: That each bid must be accompanied by a certified check in the sum of two per cent. of the amount of the bid to secure the city from any loss, resulting from failure of the bidder to comply with the terms of the bid, and that if the terms of the sale were not complied with and the successful bidder did not accept the bonds and pay for them within sixty days after their award, the city reserved the right to declare the sale forfeited and the bidder's certified check forfeited to the city.

A. T. Bell & Company submitted a bid in writing, as follows:

"For $70,000.00 6 per cent. paving bonds dated Dec. 1st, 1919, denomination $1,000, interest payable semi-annually, both interest and principal payable at some bank in N. Y. City of your selection, principal maturing 20 years after date without option of prior payment, we will pay $71,286 and accrued interest from date of bonds to date of delivery to us. We will take up and pay for bonds in current funds within 5 days after approval.

"Prior to delivery of bonds to us and promptly after awarding of same, you are to furnish us with a full and complete certified transcript of all proceedings necessary to evidence the legality to the satisfaction of our attorney.

"We enclose herewith certified check for $1,500 which check is to be held by you and applied in part payment for the bonds on date of delivery to us, returned to us on demand should we not be awarded the bonds or should our attorney decline to approve the legality of same, or applied by you as full liquidated damages in case we refuse to carry out the terms of this bid."

This bid was accepted by resolution of the council and a few days afterwards a certified transcript of the proceedings had, including the validation of the bonds under the Florida law, was sent to A. T. Bell & Company, who thereupon transmitted the same to a bond attorney in Chicago, for his opinion. It developed that this attorney was ill at the time, and about the middle

of March, A. T. Bell & Company requested the return of the transcript because of the attorney's inability to pass on the same.

On receiving the transcript again A. T. Bell & Company forwarded it to Chester B. Masslich, a well known bond attorney of New York, who on April 10th, transmitted to A. T. Bell & Company his opinion on the same, in which he declined to approve the issue of bonds for the particular reason that because of a limitation on the tax rate in the special charter of Plant City, as applied to the present valuation of property there, considered together with the amount of bonds of the city already outstanding, it appeared doubtful if the proposed issue could be paid at maturity.

Thereupon A. T. Bell & Company notified Plant City that it refused to accept the bonds and demanded the return of the certified checks in the sum of fifteen hundred dollars deposited under the terms of the bid.

In the meantime, on April 5th, the council of Plant City had declared the fifteen hundred dollars deposit forfeited because of the failure of the bidder to take up and pay for the bonds within the sixty-day period specified in the advertised notice to bidders.

Thereafter Plant City caused these certified checks to be deposited for collection.

A. T. Bell then brought suit in the Court of Common Pleas of Lucas County, Ohio, against Plant City, and garnisheed first the amount of the certified checks in the hands of the bank on which these were drawn, and later the checks themselves.

Plant City then filed an answer. A. T. Bell & Company took leave to and did file an amended petition, in which they asked for injunctive relief as well as damages. To this Plant City filed an answer, substantially the same as before, stating that the opinion of Mr. Masslich was not made in good faith but only for the purpose of releasing the bidder, and further that Mr. Masslich's objection, being only to the security for the bonds, had nothing to do with their legality.

The case was tried to the court, the evidence introduced being almost entirely documentary and consisting of the notice to bid-

der, the bid itself, its acceptance and the correspondence between the various parties.

The defendant offered no evidence whatsoever to substantiate the charges made against Mr. Masslich.

JOHNSON, J.

At the conclusion of the argument to the court by the respective counsel for plaintiff and defendant, the court announced to counsel that, owing to the difficulty of retaining in mind the testimony which had been presented to it in the hearing, it would prefer, unless serious objection were made by counsel, to dispose of the case at once; for these reasons as well as the facilitating the final disposition of the case on appeal, if appeal should be made. No objection being made, the court said (orally):

Now, gentlemen, as I understand this action the plaintiff filed the petition against Plant City, and in the original petition a claim was made for a money judgment. Attachment and garnishment were issued and to the petition an answer was filed. Thus the defendant appears in court. The defendant having been brought into court, the plaintiff filed an amended petition. An answer has been filed to the amended petition and thus the issues arise between the parties, both being personally present and within the jurisdiction of the court.

The evidence shows that certain checks were issued by the plaintiff and deposited with the city clerk of Plant City, Florida. The deposit was made upon terms and conditions that arose by an invitation on the part of the city for bids, the filing of a letter with the clerk and an acceptance afterwards by the clerk; the acceptance, however, came from the clerk of the city and thus from the city. The letter of acceptance was of the date of February 2d, 1920; which was the date fixed by the city authorities through their ordinance, at which bids would be received and were received, for the bond issue which the city proposed to market.

After the lapse of sixty days, the city deposited these checks to its credit. They came through the ordinary commercial channels to the Guardian Trust & Savings Bank in Toledo. They

were there at the time the original action was commenced. I presume, then, that it is a matter of indifference whether that fund be treated ·as an outstanding obligation in the form of a certificate of deposit, or as a credit with the Guardian Savings Bank Company. The relief which is sought is equitable in its nature, and the consequence is, that in this action, a jury having been expressly waived, the court exercises its jurisdiction as a chancery tribunal.

The first question in the record, and it seems to me the primary question, is where are the terms of this contract to be found? In the first place, they are to be found in the documents which are here in the record itself. Counsel for defendants assets that the contract arose upon the proposal in the advertisements and notices of the bond sale by the city, which appear in the transcript, and the submission of the letter of February 2d by the plaintiff together with the deposit of the checks. The plaintiff contends that the terms of the letter do not follow precisely the terms of the ordinance, but contain a new proposal, and that whatever obligation arose between the parties arose from the fact that the authorities of the defendant accepted the proposal of the plaintiff with reference to these bonds, and that a contract of sale thereby existed in the terms of the letter and the acceptance by the defendant of the offer of the counter proposition made by the plaintiff to Plant City. It is apparent upon an inspection of the two papers that the terms of the printed ordinance and of the letter of the defendant are not identical. The letter of the defendant is not a catagorical acceptance of the proposal contained in the advertisement. The letter says, ''We will take up and pay for bonds in current funds within five days after proposal.'' There is nothing of that sort in the advertisement. The letter says: ''Prior to delivery of bonds to us and promptly after awarding the same, you are to furnish us with a full and complete certified transcript of all proceedings necessary to evidence the legality to the satisfaction of our attorney.''

Those terms are not in the original proposition. The city accepted by an endorsement upon this letter: ''The above bid duly

accepted by resolution of city council passed February 2, 1920.''
It is quite apparent then, that the contract of the parties is that
which arose by reason of the proposal of the plaintiff to the de-
fendant, and not by the proposal of the defendant to the plaintiff.

The circumstances leading to the submission of this bid are rel-
evant circumstances, tending to show the circumstances and con-
ditions surrounding the parties. But the creation of the obliga-
tion took place when this proposal of the plaintiff to the city was
accepted by the city. The question then becomes whether or not
the term ''for sixty days'' is applicable. There is nothing of this
in the proposal, nor does the term in the advertisement carry
that element into this. The ordinance providing for the issuing
of the bonds, and after the passage of the ordinance public no-
tice thereof was given by advertisement which attracted the at-
tention of the bidders. Applying the act of the defendant in
reference to the checks to the terms of the bid, we find that these
checks were deposited for a specific purpose. The city became
the holder by virtue of the terms on which the plaintiff deposited
these checks, viz: to be ''returned to us on demand should we not
be awarded the bonds.'' (They were awarded). Then follow
words in the alternative, viz: ''or should our attorney decline to
approve the legality of same, or applied by you as full liquidated
damages in case we refuse to carry out the terms of this bid...''
The city must then claim the checks as part payment for the
bonds awarded upon the bid, and there is no evidence that such ap
plication has been made, nor does the evidence disclose that the
checks were applied as liquidated damages. The city has no
right to penalty or to liquidated damages until those have been
established. The defendant has neither pleaded nor proved facts
showing such established right. The city has no right at the
expiration of sixty days to declare a forfeiture. No court of
equity will recognize a forfeiture. A court of equity will recog-
nize a stipulation for liquidated damages, but the action of the
city for the collecting of these checks by forfeiture will be stayed
until its rights further appear.

Now this course of reasoning alone would leave the city still
with a qualified property in these checks and a right to hold

them as outstanding legal obligations. It becomes necessary to determine whether or not the city, under the situation that has developed subsequent to the bids, is entitled to proceed against the plaintiff for liquidated damages for a breach of the contract which was entered into between them. That, in turn, requires that we consider and find what is intended by the parties by the terms "legal" and "evidence the legality to the satisfaction of our attorney." I notice, in a Kansas case, the judges have turned lexicographers and undertake to make definitions. But the purpose in every case is to penetrate the ideas which underlie the action of the parties and upon which they have agreed in their transactions and to ascertain them through the veil of words which falls over their ideas. Mr. Masslich has expressed his opinion on the meaning of these terms, and he seems by his opinion to consider that his duty required him to refuse his approval. He says: "I regard inability to enforce payment, if that inability is caused by anything in the law, as a matter upon which my opinion could not be silent." It was within his province to consider the matters which he has passed upon in his letter of April 10th. The evidence clearly shows reasonably prompt action on the part of the bidder, the plaintiff here, to secure an opinion as to the validity of these bonds. The bidder had a right in good faith to choose his authority, viewing the market for his securities. Upon the submission to his attorney, the attorney was of the opinion that the matter was within his province. His opinion has been made one of the terms of the bid: "to the satisfaction of our attorney." Therefore the parties intended that the opinion of counsel selected in good faith should be deemed to be involved within the term "legality" as used by the parties and as within the meaning of this term of their contract. The bond issue was, in his opinion, imperfect.

Counsel for defendant contends that "legality" signifies a perfection of the procedure which has been followed in creating the bonds which have been issued. In this case the opinion of the attorney shows that the proceedings have been substantially in compliance with the statutory regulations—those formal proceedings which are necessary to be followed in order that the

bonds shall be valid expressing of an obligation. But I assume that "legality" means something more than the mere formality of issue. It means the expression of a perfect obligation. It means that the bonds shall not be merely the expression according to legal form, perfect in its intonation and following all the regulations but that the result of these formalities shall be the creation of an obligation on the issuing of those securities that is perfect so that the buyer shall have no concern about the security returning both his income and investment. That, therefore, involves the construction of the entire law that relates to the obligation. In the opinion of counsel in this case the limitations which the laws of Florida fix upon a municipality are such that in this instance there is an imperfect obligation. That is precisely the question intended to be submitted to him; so that he has given to the purchaser an opinion of the profession with regard to the security that the obligation created. Now it matters not that these bonds could be pursued to a judgment. You may have as many judgments as you can get, but only one satisfaction. It is not the ability to secure a judgment, but it is the perfection of the security of the investment by virtue of the statutory provision for payment, which constitutes its legality. Here counsel, in good faith and true to their client, have given their opinion that they should not approve the bonds. In the pleadings the defendant alleges that there was fraud and a confederation and conspiracy between the plaintiff and his counsel. There is no evidence of this. This being denied in the reply, the burden is upon the defendant to show by a preponderance of evidence in its favor and the ordinary rule is that the proof shall be clear, and as counsel say, convincing; but of this there is not the slightest evidence. On the contrary, the uncontradicted evidence is that Mr. Masslich is an attorney of high standing and national reputation.

It follows from this that the plaintiff is entitled to a permanent injunction restraining the paying over of this fund and restraining the defendant from seeking to enforce it. I am not sure whether the prayer of the petition is for cancellation and surrender of these certificates. If it is, cancellation will be decreed, it being within the jurisdiction of the court.